**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| STEVEN CAIN, an individual;<br>RYAN CAIN, an individual,<br><br>       Plaintiffs,<br><br>v.<br><br>THE CITY OF EDMOND, a<br>Municipal Corporation;<br>TIM HARWELL, an individual;<br>JACKIE COLLAR, an individual,<br><br>       Defendants. | Case No. CIV-09-1089-M |

## ORDER

This case is scheduled for trial on the Court's October, 2010, trial docket.

Before the Court is Defendants' Joint Motion for Summary Judgment and Brief in Support, filed August 2, 2010. On August 27, 2010, plaintiffs filed their response. Based upon the parties' submissions, the Court makes its determination.

### I. INTRODUCTION

On April 9, 2008, Steven Cain and his son Ryan Cain ("plaintiffs") resided at 1000 East Ridgecrest Road, Edmond, Oklahoma. Also residing at this address was Illiyana Cain, Ryan Cain's now wife. Defendants Tim Harwell and Jackie Collar are both police officers commissioned by defendant, the City of Edmond ("Edmond").

On the night of April 9, 2008, plaintiffs admit to having several beers while watching television. Steven Cain, a disabled veteran, at approximately 12:00 p.m. on April 9, 2008, asked his son Ryan Cain for his prescription medication. Ryan Cain refused to disclose the location of his father's medication informing him he was not to take said medication because he had been drinking.

1

At approximately 12:45 a.m. on April 10, 2008, Steven Cain placed a 911 call to the Edmond Police Department. Steven Cain admits he hung up the phone before the dispatcher answered. The 911 dispatcher called back, and Steven directed his son to answer. Ryan Cain answered the phone and informed the police dispatcher that he was a resident, that his father a disabled Vietnam veteran had called 911, but that no one was hurt and that neither the police nor fire department were needed. After Ryan's conversation with the 911 dispatcher, plaintiffs went back to watching television.

Illiyana Cain, at the time Ryan Cain's fiancee, was in another room of the residence watching television. Illiyana was unaware of the 911 call placed by Steven Cain or the return call made by the 911 dispatcher. Thereafter, Illiyana Cain entered another room in the residence where Ryan Cain was now on the computer. Illiyana states that the smell of beer on Ryan on a weeknight upset her. After telling Ryan she was not happy with his drinking on a weeknight Illiyana proceeded to walk into the living room toward the door. Ryan proceeded to follow Illiyana into the living room apologizing to her for his drinking on a weeknight.

Plaintiffs contend it was at this exact time that Officers Harwell and Collar of the Edmond Police Department entered plaintiffs' residence without ringing the doorbell or knocking, without a warrant or the consent of plaintiffs. Illiyana states after the door opened in her face there was a police officer standing there and another police officer standing behind him. Illiyana states one officer kept telling her to come outside without showing his badge or saying why she needed to come outside. Illiyana states this being her first encounter with the police this incident "freaked her out". Instead of leaving the house she backed off and told the officers they had no right to be there. Steven Cain in defense of Illiyana got up from the couch and started walking towards a visibly upset Illiyana with his hands in the air in a surrender position. Steven Cain stopping approximately seven

2

feet from the officers pleaded with the officers to leave Illiyana alone and to get out of his house. Both Steven Cain and Illiyana state that they both were telling the officers everything was all right, that they had no right to be there and for the officers to leave their home. Illiyana states one of the two officers told her that he had the right to be in her house whenever he wanted. Plaintiffs contend the Officers did not present identification or respond to the pleas of Steven Cain or Illiyana. Steven Cain states while now standing still in the living room in a surrendering position, one of the officers stomped on his toe, twisted his body and then slammed him against the concrete floor. Steven Cain was then ordered by one of the officers to put his hands behind his back which he did.

     Ryan Cain while watching the incidents thus far informed the officers that his father was a 100% disabled veteran and pleaded with the officers to stop the attack on his father. Ryan Cain claims he was then attacked by the other police officer. According to Ryan Cain the other officer jumped on him and threw him onto the concrete floor. Ryan Cain claims he did not touch either officer or make any aggressive movement. Ryan Cain states the officer held him against the floor with his knee in his back while he screamed in pain. The officer then told Ryan to put his hands behind his back which Ryan was unable to do because his arms were trapped under his body. One of the officers then tased Ryan Cain and at some point hit him several times in the back of his head and neck. Shaking and crying and still unable to put his arms behind his back now with both officers on top of him, one of the officers tased Ryan Cain a second time. The effect of the second tase also shocked one of the officers and forced that officer off of Ryan Cain's back; Ryan was then able to put his hands behind his back and was handcuffed. After being tased twice Ryan Cain states he was delirious and does not remember being escorted out of the house or into the police car. Steven Cain states both he and Ryan were smashed up by the police officers. Steven Cain states that

3

both he and Ryan were "scarred up" and his eye glasses were crushed.

Plaintiffs were both arrested and taken to the Edmond City jail in separate police vehicles. While driving past Edmond Hospital in route to the jail, Steven Cain complained of pain in his side and asked to be taken to the hospital emergency room. Steven Cain, a disabled veteran who suffers from pre-existing peripheral neuropathy in his right hand, also began to complain of pain in his wrists and asked the officers to loosen the handcuffs. According to Steven Cain, an officer said he would loosen the cuffs but did not loosen the handcuffs nor was Steven Cain taken to the hospital. Once arriving at Edmond's jail Steven Cain claims he again asked for medical treatment, but no treatment was provided. Steven Cain states his pain was so severe that he nearly passed out while being booked.

During his April 9, 2008 arrest by defendants, Steven Cain suffered three broken ribs, severe bruising to his torso, abrasions on his face, a bruised toe nail and aggravation of his pre-existing peripheral neuropathy in his right hand, which also causes him neck problems. During the April 9, 2008 arrest Ryan Cain suffered bruises on his face, wrists, and his side. Having previously been diagnosed with "generalized anxiety", Ryan Cain claims as a result of the two officers being on top of him and his being tased twice, he now suffers from anxiety, migraine headaches and a sleep disorder. Ryan Cain is currently seeing a psychiatrist and taking several prescription medications for his diagnosed anxiety, migraines and sleep disorder. Steven Cain is currently being treated at the V.A. Hospital for extreme emotional distress and exasperation of the pre-existing peripheral neuropathy in his right hand. Steven Cain also claims as a result of the attack by Officers Harwell and Collar on April 9, 2008, he has been prescribed several prescription medications and experiences nightmares and sleeplessness.

II.     SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The moving party is entitled to summary judgment where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. When applying this standard, [the Court] examines the record and reasonable inferences drawn therefrom in the light most favorable to the non-moving party." *19 Solid Waste Dep't Mechanics v. City of Albuquerque*, 156 F.3d 1068, 1071-72 (10th Cir. 1998) (internal citations and quotations omitted).

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Furthermore, the non-movant has a burden of doing more than simply showing there is some metaphysical doubt as to the material facts. Rather, the relevant inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Neustrom v. Union Pac. R.R. Co.*, 156 F.3d 1057, 1066 (10th Cir. 1998) (internal citations and quotations omitted).

III.    DISCUSSION

Defendants assert that they are entitled to judgment as to plaintiffs' claims against them under 42 U.S.C. § 1983 and their state law claim for outrageous conduct causing emotional distress.

   A.   Unlawful Arrest

Plaintiffs assert Officers Harwell and Collar's warrantless arrest of them in their home was unlawful. Plaintiffs also assert their Fourth Amendment right to be free from false arrest was

5

violated.[1]  Defendants contend exigent circumstances made plaintiffs' April 9, 2008 arrest lawful.

Warrantless arrests in a person's home is prohibited by the Fourth Amendment, absent probable cause and exigent circumstances. *Welsh v. Wisconsin*, 466 U.S. 740, 749 (1984). Further, warrantless arrests in the home are presumptively unreasonable, and "[w]hen the government's interest is only to arrest for a minor offense, that presumption of unreasonableness is difficult to rebut, and the government usually should be allowed to make such arrests only with a warrant issued upon probable cause by a neutral and detached magistrate." *Id.* at 749-50. Additionally,

> an important factor to be considered when determining whether any exigency exists is the gravity of the underlying offense for which the arrest is being made. Moreover, although no exigency is created simply because there is probable cause to believe that a serious crime has been committed . . . application of the exigent-circumstances exception in the context of a home entry should rarely be sanctioned when there is probable cause to believe that only a minor offense . . . has been committed.

*Id.* at 753. Finally, the Supreme Court has noted "that it is difficult to conceive of a warrantless home arrest that would not be unreasonable under the Fourth Amendment when the underlying offense is extremely minor." *Id.*

Having carefully reviewed the parties' submissions, and viewing the facts and inferences in the light most favorable to plaintiffs, as the Court must at the summary judgment stage, the Court finds that defendants are not entitled to summary judgment as to plaintiffs' unlawful arrest claim. Officers Harwell and Collar contend they arrested plaintiffs for what they perceived to be domestic violence. It is undisputed that there were no domestic violence charges ever filed against plaintiffs. It is likewise undisputed that the resisting an officer charge filed against plaintiffs was reduced and

---

[1] In their motion, Defendants failed to address plaintiffs' Fourth Amendment right to be free from false arrest claim. That claim, therefore, is not at issue.

subsequently dropped leaving no charges against plaintiffs. Further, even assuming Officers Harwell and Collar had probable cause to arrest plaintiffs,[2] the Court finds there exist genuine issues of material fact as to whether any exigent circumstances were present to justify the warrantless arrest of plaintiffs in their home.

Accordingly, the Court finds that defendants' motion for summary judgment should be denied as to plaintiffs' unlawful arrest and seizure claim.

B. Excessive Force

Plaintiffs also assert that defendants used excessive force in their allegedly unlawful arrest of plaintiffs in violation of the Fourth Amendment.

> Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake. . . . Because the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application . . . its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.

*Cortez v. McCauley*, 478 F.3d 1108, 1125 (10th Cir. 2007) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

Additionally,

> The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. . . . With respect to a claim of excessive force, the same standard of reasonableness at the moment applies:

---

[2] In making its ruling, the Court does not render any opinion as to whether Officers Harwell and Collar, in fact, had probable cause to arrest plaintiffs.

7

> Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments - in circumstances that are tense, uncertain, and rapidly evolving - about the amount of force that is necessary in a particular situation.
>
> As in other Fourth Amendment contexts, however, the reasonableness inquiry in an excessive force case is an objective one: the question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.

*Id.* (quoting *Graham*, 490 U.S. at 396-97).

Having carefully reviewed the parties' submissions, the Court finds that plaintiffs have presented sufficient evidence to create a genuine issue of material fact as to whether the amount of force Officers Harwell and Collar used was reasonable. Specifically, the Court finds that based upon plaintiffs' version of the incident in question, and in light of the nature of the crimes charged and later dropped, a jury could determine that the force used by the officers was excessive. Accordingly, the Court finds defendants' motion for summary judgment should be denied as to plaintiffs' excessive force claim.

### C. Liability of Edmond

Plaintiffs allege Edmond failed to properly train its officers on the use of force. Plaintiffs also allege Edmond does not provide adequate supervision and discipline of its officers and that this deliberate indifference led to the unlawful search, seizure and false arrest of plaintiffs.

#### 1. Failure to Train

To recover on a failure-to-train claim:

plaintiff must first prove the training was in fact inadequate, and then satisfy the following requirements: (1) the officers exceeded constitutional limitations on the use of force; (2) the use of force arose under the circumstances that constitute a usual

8

and recurring situation with which police officers must deal; (3) the inadequate training demonstrates a deliberate indifference on the part of the city toward persons with whom the police officers come into contact, and (4) there is a direct causal link between the constitutional deprivation and the inadequate training.

*Brown v. Gray*, 227 F.3d 1278, 1286 (10th Cir. 2000) (internal citation omitted).

Plaintiffs allege that defendant Edmond failed to provide adequate training to its officers on the proper use of force and the proper procedure for conducting a search of a person's residence. Plaintiffs also allege Edmond does not "counsel and motivate" its officers to report wrongdoings of other officers.

A plaintiff seeking to impose liability on a municipality under § 1983 must identify a municipal policy, custom, or practice that caused the plaintiff's injury. *Bd. of County Comm'rs of Bryan County, Okla. v. Brown*, 520 U.S. 397, 403 (1997). Further,

> it is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the "moving force" behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.

*Id.* at 404 (emphasis in original). Finally, "[w]here a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." *Id.* at 405.

Plaintiffs assert Edmond does not provide adequate training to its officers on the proper use of force and the proper procedure for conducting a search of a person's residence. In support of this allegation plaintiffs state Officers Harwell and Collard entered their home and attacked them causing

9

them injuries. Additionally, plaintiffs contend this incident reflects a pattern and practice of Edmond's police officers using excessive force and Edmond's failing to properly discipline and supervise its officers.

Edmond contends its officers did not exceed constitutional limitation during the arrest of plaintiffs and that plaintiffs failed to present evidence of deliberate indifference. Edmond contends all of its police officers are adequately trained. Edmond's training coordinator states all of Edmond's police officers are CLEET certified and that Edmond's continuing education training requirements which include training in ground fighting and defensive tactics, exceed CLEET's statutorily mandated training requirements. Additionally, Edmond contends plaintiffs have failed to introduce any evidence of a causal nexus between any alleged training shortages and plaintiffs' alleged injuries.

Having carefully reviewed the parties' submissions, and viewing the facts and inferences in the light most favorable to plaintiffs, the Court finds that plaintiffs have not presented sufficient evidence of any policy, custom, or practice to impose liability on Edmond. Additionally, the Court finds plaintiffs have not presented sufficient evidence to create a genuine issue of fact as to whether Edmond's alleged failure to train its officers on the proper use of force and the proper procedure for conducting a search of a person's residence directly caused the deprivation of plaintiffs' constitutional rights. Accordingly, the Court finds that Edmond is entitled to summary judgment as to plaintiffs' failure to train claims.

    2.     Failure to Supervise

Plaintiffs also contend Edmond violated their constitutional rights by failing to properly supervise and discipline its police officers and thus condoning their unlawful behavior. Specifically,

plaintiffs contend Edmond had knowledge of a pattern of excessive force being utilized by its officers but acted with deliberate indifference toward the conduct and the protection of its citizens. Plaintiffs allege Edmond failed to investigate plaintiffs' claims and encouraged Officer Harwell to falsify evidence to cover up his use of excessive force. Edmond contends the April 9, 2008 incident was not negligently handled. Specifically, Edmond contends that on April 9, 2008, at some point during the incident, a supervising officer was called to the scene and found there to be exigent circumstances and the April 9, 2008 incident was discussed with upper management.

To prevail on a failure to supervise claim under § 1983 against a municipality there must be evidence of a deliberate indifference to the rights of its citizens such that any shortcoming is thought of as a city policy or custom. *Whitewater v. Goss,* 192 Fed. Appx. 794, 797 (10th Cir. 2006). Thus, to survive summary judgment plaintiffs must present sufficient evidence indicating Edmond's deficiency in the supervision of its officers to establish deliberate indifference.

Plaintiffs contend the lack of knowledge on the part of the Edmond Chief of Police of plaintiffs' excessive force claim or any investigation of plaintiffs' claim a year after the incident occurred is evidence of the deliberate indifference of Edmond. During his deposition in July 2009, Chief of Police Bob Ricks admits he knew nothing about the April 8, 2008 incident or of any investigation. Further, plaintiffs contend that Edmond's failure to officially investigate or discipline Officer Harwell for his frequent uses of force as well as Officer Harwell's supervisor's encouraging him to falsify evidence to cover up his use of excessive force in another incident establishes deliberate indifference on the part of Edmond. Finally, plaintiffs contend the fact that Officer Harwell admits that he did not report the wrongdoings of his supervisor because of possible retaliation reflects a possible department wide supervision problem.

Having carefully reviewed the parties' submissions, the Court finds that plaintiffs have submitted sufficient evidence to create a genuine issue of material fact as to whether Edmond's failure to properly supervise its officers evidences a deliberate indifference to the rights of its citizens, thus establishing a perceived unlawful city policy or custom.

Accordingly, the Court finds that Edmond is not entitled to summary judgment as to plaintiffs' failure to supervise claim.

### 3. Failure to Provide Medical Attention

Plaintiffs present a failure to provide medical attention claim pursuant to 42 U.S.C. § 1983 alleging that their Eighth Amendment constitutional rights were violated as a result of the events surrounding the April 9, 2008 arrest. Under the Eight Amendment plaintiffs must show "deliberate indifference to serious medical needs." *Estate of Hocker v. Walsh*, 22 F.3d 995, 998 (10th Cir. 1994) (citations omitted). Furthermore, the Supreme Court has held that "an inadvertent failure to provide adequate medical care" is not a constitutional violation. *Estell v. Gamble*, 429 U.S. 97, 105-06. The test for deliberate indifference is both objective and subjective. *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006) The objective component of the test requires any harm suffered to be cognizable under the cruel and unusual punishment clause of the Eighth Amendment. *Mata v. Saiz*, 427 F.3d 745, 752-53 (10th Cir. 2005). The subjective component of the deliberate indifference test is met when evidence reflects defendant knew of the substantial risk of harm and disregarded that risk by failing to take reasonable steps to abate the harm. *Callahan*, 471 F.3d at 1159.

In this case, plaintiffs assert that Officers Harwell and Collar and Edmond were deliberately indifferent to the substantial risk of serious harm that befell plaintiffs in derogation of their constitutional rights. Specifically, Steven Cain alleges his two requests for medical treatment after

being placed under arrest were ignored by Edmond's police force and that Edmond failed to provide adequate training to its officers to provide medical attention to those injured persons under arrest. Steven Cain admits his injuries were not visible and that he is unsure from which officers he requested treatment. Ryan Cain denies having requested medical treatment during his arrest. Defendants contend neither Officer Harwell nor Collar had any contact with plaintiffs after leaving their home and that neither plaintiff requested medical treatment.

In order to establish liability on the part of Edmond, the constitutional injury must be caused by the entity's policies and customs. *Monell*, 436 at 694. The actions of the governmental entity must be the moving force behind the constitutional violation. *Id*. A municipality may not be held liable simply because it "employs a tortfeasor." *Bd. of County Comm'rs of Bryant County, Okla. v. Brown*, 520 U.S. 397, 403 (1997) (internal citation omitted). Furthermore, the Tenth Circuit has held that a defendant board may not be held liable for violating §1983 due to the actions of its employees absent a showing that the employees in question were executing an unconstitutional policy or custom of the defendant. *Jantzen v. Bd. of County Comm'rs of Canadian County*, 188 F.3d 1247, 1259 (10th Cir. 1999). "That a plaintiff has suffered a deprivation of federal rights at the hands of a municipal employee will not alone permit an inference of municipal culpability and causation." *Brown*, 520 U.S. at 406-07.

If plaintiff establishes that the municipality maintains an unconstitutional policy, then he must show that it did so with the requisite degree of culpable intent. *Lopez v. LeMaster*, 172 F.3d 756, 763 (10th Cir. 1999). The requisite degree in the present case is "deliberate indifference to inmate health or safety." *Id*. The Tenth Circuit defined the deliberate indifference standard as follows:

> We, therefore, hold that an official or municipality acts with deliberate indifference if its conduct (or adopted policy) disregards a known or obvious risk that is very likely to result in the violation of a prisoner's constitutional rights. *See* W. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser & Keeton on the Law of Torts* § 34, at 213 (5th ed. 1984) (describing reckless conduct as conduct in disregard of a known or obvious risk that was so great as to make it highly probable that harm would follow, and which thus is usually accompanied by a conscious indifference to the consequences) (footnotes omitted); *see Germany v. Vance*, 868 F.2d 9, 18 n.10 (1st Cir. 1989).

*Berry v. City of Muskogee, Okla.*, 900 F.2d 1489, 1496 (10th Cir. 1990). Furthermore, deliberate indifference has an objective component, *e.g.* the substantial risk of serious harm, and a subjective component, *e.g.* that the prison official was deliberately indifferent to plaintiff's safety. *Verdecia v. Adams*, 327 F.3d 1171, 1175 (10th Cir. 2003).

In this case, plaintiffs assert that Edmond was deliberately indifferent to the substantial risk of serious harm that befell plaintiffs in derogation of their constitutional rights. Specifically, plaintiffs allege that Edmond failed to properly train its officers to provide medical attention to arrestees. Defendants assert they were unaware of plaintiffs' need for medical attention.

Having reviewed the parties' submissions and viewing the evidence in the light most favorable to plaintiffs, the Court finds, as previously noted, there is not a genuine issue of material fact concerning whether Edmond failed to properly train its officers. Accordingly, the Court finds that defendants are entitled to summary judgment as to Plaintiffs' failure to provide medical claim.

### D. Outrageous Conduct

To recover on an outrageous conduct claim, plaintiffs must show defendants by extreme and outrageous conduct intentionally or recklessly caused them severe emotional distress. *Breeden v. League Servs. Corp.,* 575 F.2d 1374 (Okla. 1978). In their response defendants focus principally

on the severity of the emotional distress inflicted upon plaintiffs during their arrest. It is undisputed that Steven Cain, a disabled veteran, suffered three broken ribs and aggravation of a pre-existing condition affecting his right hand during his arrest on April 9, 2008. Steven Cain also states during deposition that he is having severe emotional problems about the arrest. Steven Cain also claims he is now having nightmares about the police officers being on top of him while he is in bed and cannot wake up. Steven Cain explains that because of the way he was treated by the police officers during the April 9, 2008 arrest he is now taking medication, sleeping pills and antidepressant medication. He also states he is seeing a psychiatrist and psychologist. Likewise, Ryan Cain states he is suffering from sleep disorder, anxiety and migraine headaches as a result of his arrest. Ryan Cain is also seeing a psychiatrist and taking several prescription medications to help with his anxiety, sleeplessness and migraine headaches.

The Court has carefully reviewed the parties' briefs and evidentiary submissions. Viewing the evidence in the light most favorable to plaintiffs and viewing all reasonable inferences in plaintiffs' favor, the Court finds plaintiffs have presented sufficient evidence to create a genuine issue of material fact as to whether defendants' conduct intentionally or recklessly caused severe emotional distress to plaintiffs. Specifically, the Court finds that plaintiffs have presented sufficient evidence that they suffered physical and severe emotional distress as a result of their April 9, 2008 arrest. Accordingly, the Court finds that a reasonable jury could find the emotional distress suffered by plaintiffs to be severe and thus, defendants are not entitled to summary judgment as to plaintiffs' outrageous conduct claim.

IV. CONCLUSION

For the reasons set forth above, the Court GRANTS IN PART and DENIES IN PART

defendants' Motion for Summary Judgment [docket no.49] as follows:

(1) The Court GRANTS defendants' motion for summary judgment as to plaintiffs' failure to provide medical attention and failure to train claims; and

(2) The Court DENIES defendant's motion for summary judgment as to plaintiffs' remaining claims.

**IT IS SO ORDERED this 27th day of September, 2010.**

_____
VICKI MILES-LaGRANGE
CHIEF UNITED STATES DISTRICT JUDGE